UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JUAN ALEXANDER DOMINGUEZ RODRIGUEZ,<br>Petitioner,<br>v.<br>WARDEN, NORTHWEST ICE PROCESSING CENTER, et al.,<br>Respondents. | Case No. 2:26-cv-02921-TMC<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

## I. INTRODUCTION

Before the Court is Petitioner Juan Alexander Dominguez Rodriguez's ("Dominguez") petition for writ of habeas corpus. Dkt. 1. On July 12, 2026, Dominguez was arrested by local authorities in Miami, Florida, for an alleged hit and run and was in local custody for about one week. *Id.* ¶ 17. On July 17, Dominguez was transferred to an U.S. Immigration and Customs Enforcement ("ICE") detention facility. *Id.* ¶ 17; Dkt. 9 ¶ 8–12; Dkt. 10-1 at 3.[1]

[1] Some facts articulated in this section come from Dominguez's verified petition. A court "may treat the allegations of a verified . . . [pro se] petition as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003).

Dominguez challenges the constitutionality of his re-detention "after nearly three years of liberty, [and] without prior notice, an individualized custody determination, or a meaningful opportunity to be heard." Dkt. 11 at 1. The Court agrees that his procedural due process rights have been violated but concludes the violation can be remedied by a post-deprivation hearing where the government must prove that his re-detention is justified by clear and convincing evidence. The Court therefore GRANTS Dominguez's petition for writ of habeas corpus but DENIES the request for immediate release from custody.

## II. BACKGROUND

Dominguez is a Cuban citizen. Dkt. 1 ¶ 1. On September 2, 2023, Dominguez was paroled into the United States under the Cuban Humanitarian Parole ("CHP") program. *Id.* ¶ 15; Dkt. 9 ¶ 6. The program, along with Dominguez's parole status, expired on June 12, 2025. Dkt. 9 ¶ 6.

On August 4, 2025, Dominguez filed an Application to Register Permanent Residence or Adjust Status (Form I-485) with the U.S. Citizenship and Immigration Services ("USCIS"), which remains pending. Dkt. 9 ¶ 7; Dkt. 1 ¶ 16.

On July 12, 2026, Dominguez was arrested by the Miami Police Department for one count of hit and run and was issued an immigration detainer and a Notice to Appear ("NTA") by immigration officers. Dkt. 9 ¶¶ 8–10; Dkt. 10-1 at 3. Five days later, Dominguez was transferred to ICE custody. Dkt. 9 ¶ 12. The state case remains pending. Dkt. 10-1 at 3.

Dominguez was scheduled to appear before an immigration judge ("IJ") in Miami, Florida on July 30. Dkt. 10-2 at 2. But, between July 17 and July 28, he was transferred from Miami, Florida, to El Paso, Texas, and then to Tacoma, Washington. Dkt. 9 ¶¶ 11–15.

Dominguez was scheduled for an initial master calendar hearing with an IJ on September 14, 2026. Dkt. 9 ¶ 16. The record does not show any final removal order. *See* Dkt. 10.

On August 17, Dominguez filed a petition for writ of habeas corpus. Dkt. 1. On August 31, the United States filed a return, to which Dominguez filed a traverse. Dkts. 8, 11.

The habeas petition is now ripe for the Court's review. For the reasons below, the Court GRANTS Dominguez's petition for writ of habeas corpus but DENIES the request for immediate release from custody.

## III. LEGAL STANDARDS

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## IV. DISCUSSION

Dominguez argues that the United States[2] violated his Fifth Amendment right to procedural due process because he was re-detained "after nearly three years of liberty [and] without prior notice, an individualized custody determination, or a meaningful opportunity to be heard." Dkt. 11 at 1 (citing *Matthews v. Eldridge*, 424 U.S. 319 (1976)); *see also* Dkt. 1. He seeks release from custody or a prompt bond hearing at which he can contest the factual basis for his detention. Dkt. 1 at 6. The United States disagrees, arguing that (1) Dominguez's re-detention was lawful under 8 U.S.C. § 1225(b)(2)(A) and (2) Dominguez's detention otherwise comports with due process. Dkt. 8. The Court concludes that Dominguez's detention is controlled by

[2] Dominguez names only his custodian, the Warden of NWIPC, as a Respondent. The United States of America has responded to the petition as an interested party to defend the basis for Dominguez's custody. *See* Dkt. 6.

8 U.S.C. § 1226; the United States violated Dominguez's procedural due process; and Dominguez is entitled to a prompt post-deprivation hearing.

**A. Dominguez's detention falls under 8 U.S.C. § 1226.**

Dominguez argues that his detention is subject to 8 U.S.C. § 1226, and not 8 U.S.C. § 1225(b), because he was apprehended in the interior of the United States when ICE took him into custody. Dkt. 1 ¶¶ 45–47 (citing *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026)); Dkt. 11 at 3–4. The United States argues that Dominguez is mandatorily detained under 8 U.S.C. § 1225(b)(2)(A) because he is an applicant for admission. Dkt. 8 at 4–5. The government argues that despite his initial CHP status, his immigration status "reverted" to that of an arriving noncitizen once his CHP status expired. *Id.*

The Court concludes that Dominguez's detention is subject to 8 U.S.C. § 1226. For one, the United States' records appear inconsistent with its contention. The warrant for Dominguez's arrest was made "pursuant to [Immigration and Nationality Act] section 236," codified in the United States Code at 8 U.S.C. § 1226. Dkt. 10-3; *see, e.g.*, *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 302–04, 311–312 (E.D.N.Y. Nov. 28, 2025) (determining that a noncitizen was governed by Section 1226(a) as shown by the respondents' decision to secure a warrant "pursuant to sections 236" of the INA"). Second, Dominguez's parole status was terminated in June 2025, Dkt. 9 ¶ 6, and ICE took no action to detain him based on the expired parole for more than a year. *See Sananes Hernandez v. Leyva*, 2026 WL 1948965, at *6 (D. Utah July 6, 2026) ("[E]ven if Mr. Sananes Hernandez's [Venezuelan] parole properly terminated on April 15, 2025, he was already present within the interior of the United States and continued to be present within the United States for approximately 13 months before ICE officers arrested him on May 14, 2026. That presence demands that Mr. Sananes Hernandez's detention be governed by § 1226(a)."); *see also id.* at *8 (stressing that the plain language of "forthwith" in 8 U.S.C.

§ 1182(d)(5)(A), requiring DHS to act "within a reasonable time under the circumstances of the case[, or] promptly and with reasonable dispatch" if DHS seeks to re-detain a noncitizen after their parole expires). Accordingly, Dominguez is subject to discretionary detention under Section 1226 and remains eligible for release on bond while his removal proceedings are pending.

**B. Dominguez is entitled to a prompt post-deprivation hearing consistent with due process.**

Dominguez contends that due process is a "fundamental" constitutional requirement, and that the United States violated this obligation through his "continued detention." Dkt. 1 at 29–40; Dkt. 11 at 6. The United States advances two arguments. The first is that Dominguez is not entitled to a pre-deprivation hearing because Dominguez was not subject to any form of conditional liberty, such as parole, prior to his re-detention. Dkt. 8 at 6. The second argument is that, even if the Court determines Rodriguez had a liberty interest in avoiding re-detention, due process was followed. *Id.*

The Court determines that Dominguez's re-detention did not comport with procedural due process. The government previously released Dominguez and made no effort to re-detain him for more than a year after it terminated his parole program. During that time, he continued to pursue adjustment of status and his presence was well-known to the government. Noncitizens who have been released previously are entitled to due process protections before having their liberty revoked. *Caglar v. Wamsley*, No. 2:26-cv-00787-TMC, 2026 WL 1123515, at *3 (W.D. Wash. Apr. 24, 2026) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (probation)). However, in cases involving public safety allegations by a state agency, "a prompt post-arrest hearing at which the individual can contest his detention and at which the Government bears the burden of proving by clear and convincing evidence the individual's dangerousness or risk of flight based on changed circumstances" is

sufficient. *Id.* (quoting *O.F.C.* at *12) (citing *Quinonez Torres v. Hermosillo*, No. 2:26-CV-00076-TLF, 2026 WL 547591, at *10 (W.D. Wash. Feb. 23, 2026)). Similarly, the Court concludes that here, where ICE took custody of Dominguez after he had been detained by local authorities for an alleged hit and run, a post-arrest hearing is sufficient. *See id.*

The application of the flexible *Matthews* three-part test confirms this result. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) ("*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."). This test considers: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Matthews* factors in immigration detention context). The Court will consider each factor in turn.

*1. The first factor—private interest affected by the official action—weighs in favor of Dominguez.*

The United States argues that Dominguez's private liberty interest must be considered in the broader picture of the immigration system where a noncitizen "has a lesser liberty than a citizen." Dkt. 8 at 7. Dominguez argues that "[f]reedom from physical confinement is the most elemental liberty interest," and that the expiration of his CHP status does not "extinguish [his] constitutional interest in continued freedom." Dkt. 11 at 6 (citations omitted).

The Court agrees with Dominguez. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Dominguez

"established a life in Florida, pursued adjustment, and remained available to immigration authorities," (Dkt. 11 at 6), and ICE did not detain him for about thirteen months after it terminated his parole program. Dkt. 9 ¶¶ 6–8. The first factor weighs in favor of Dominguez.

### 2. *The second factor—risk of erroneous deprivation—weighs in favor of Dominguez.*

The United States argues that the risk of erroneous deprivation of Dominguez's liberty without a hearing is "minimal" because he was not admitted into the country and was placed in state custody after being arrested for a state crime. Dkt. 8 at 7. Dominguez contends that the risk is "high," underscoring the thirteen months delay between his parole expiring and re-detention and the lack of notice and opportunity to respond. Dkt. 11 at 6–7 (citing *Urtecho Martinez v. Mullin*, No. 2:26-cv-02674-SKV at 7–11 (W.D. Wash. Aug. 19, 2026)).

This factor weighs in Dominguez's favor. The government did not provide any process to Dominguez challenge his re-detention. *See Martinez*, No. 2:26-cv-02674-SKV, at 9; Dkts. 1, 8. Even if the government ultimately shows that Dominguez's hit and run constitutes a changed circumstance, Dominguez must still be provided with an "opportunity to address the bases asserted for his re-detention." *Sandhu v. Noem*, No. 2:26-CV-00465-TLF, 2026 WL 607701, at *3 (W.D. Wash. Mar. 4, 2026) (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025)). Several months have passed since Dominguez was re-detained, and the government has provided no details about the underlying circumstances of the arrest that allegedly justified his re-detention. Dkt. 8 at 7. Thus, the risk of erroneous deprivation weighs in Dominguez's favor.

### 3. *The third factor—the government's—weighs neutrally.*

The United States emphasizes Ninth Circuit precedent recognizing the government's strong interest in enforcing immigration laws and carrying out removal orders. Dkt. 8 at 7–8

(citations omitted). Dominguez argues that the government's interest does not justify providing no process, especially where the government delayed re-detaining him for thirteen months and custody proceedings and individualized release conditions are a "marginal burden" compared to physical confinement. Dkt. 11 at 7.

This factor is mixed. Dominguez is correct that the burden of a hearing is marginal compared to the cost of erroneously detaining someone who can be supervised safely on bond. Incarcerating a person who does not pose a flight risk or danger to the community "not only serves no purpose but undermines the Government's own interest in minimizing the fiscal and administrative effects of unnecessary incarceration and imposes societal costs by removing individuals from their families, communities, and jobs." *O.F.C.*, 2026 WL 74262, at *11. But the Ninth Circuit has recognized the government's "obvious interest" in minimizing flight risk and protecting the public from noncitizens who may pose a risk to public safety. *Rodriguez Diaz*, 53 F.4th at 1208. Where, as here, the government takes custody of a noncitizen for removal proceedings who was already detained by state officials based on an alleged public safety violation (particularly one, such as hit-and-run, that also implicates risk of flight), that interest supports requiring only a prompt post-arrest hearing. *See O.F.C.*, 2026 WL 74262, at *11 ("[T]he Government might have an interest in temporarily holding an individual who has been convicted of a crime while on bond for a short period of time so that a neutral decisionmaker can confirm whether the individual constitutes a danger to the community.").

*4. The appropriate remedy is a post-deprivation hearing.*

This Court concludes that, in this context, "due process requires the Government to provide a prompt post-arrest hearing at which the individual can contest his detention and at which the Government bears the burden of proving by clear and convincing evidence the individual's dangerousness or risk of flight based on changed circumstances." *Caglar*, 2026 WL

1123515, at *5 (quoting *O.F.C.*, 2026 WL 74262, at *12). While in initial bond hearings under § 1226(a) noncitizens must prove their entitlement to bond, this Court agrees with other district courts in this Circuit that, in the context of re-detention, the burden must be on the government to justify re-detention by clear and convincing evidence. "That burden shifting is logical even for a post-deprivation hearing . . . . [T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing justification for the re-detention." *Martinez Hernandez v. Andrews*, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025); *see also, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034, 1038 (N.D. Cal. 2025); *Singh v. Noem*, No. 2:26-CV-00246-BAT, 2026 WL 592265, at *3 (W.D. Wash. Mar. 3, 2026).

## V. CONCLUSION

For these reasons, the Court GRANTS IN PART and DENIES IN PART Dominguez's petition for writ of habeas corpus. Dkt. 1. The Court ORDERS as follows:

1. Dominguez's re-detention without a prompt post-arrest hearing and notice of said hearing violates the Due Process Clause of the Fifth Amendment.
2. Within 7 days of this Order, the interested non-party, the United States, must either release Dominguez or provide him a bond hearing before an Immigration Judge at which the government bears the burden of proving by clear and convincing evidence his dangerousness or risk of flight based on changed circumstances.
3. If Petitioner is released, Respondents must return to Petitioner any personal property, including any personal identification document (other than a passport) and any employment authorization document.

4. Nothing in this Order prevents and IJ from granting a continuance in Petitioner's bond proceedings at his request.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 23rd day of October, 2026.

Tiffany M. Cartwright
United States District Judge